**NORFOLK AND WESTERN RAILWAY COMPANY, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; Carl E. Shrader, Respondents.**

No. 92–2162.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1993.

Decided Sept. 30, 1993.

778

James Stanton Whitehead, Sidley & Austin, Chicago, IL, argued (Linzey D. Jones, Jr., Sidley & Austin, Chicago, IL, Douglas A. Smoot, Jackson & Kelly, Charleston, WV, on brief), for petitioner.

Jeffrey Steven Goldberg, U.S. Dept. of Labor, Washington, DC, argued (Marshall J. Breger, Sol. of Labor, Donald S. Shire, Associate Sol., Patricia M. Nece, Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, DC, on brief), for respondent Director.

Don Matthew Stacy, Beckley, WV, argued, for respondent Shrader.

Before WIDENER and HAMILTON, Circuit Judges, and POTTER, United States District Judge for the Western District of North Carolina, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

Norfolk and Western Railway Company (N & W) appeals from a decision and order of the Benefits Review Board affirming the administrative law judge's (ALJ) award of black lung benefits to Carl Shrader, a former employee of N & W. N & W contests the award of benefits on two grounds: that Shrader was not a miner as defined in 30 U.S.C. § 902(d) and that the ALJ improperly calculated Shrader's period of coal mine employment, and thereby improperly invoked the presumption of 20 C.F.R. § 718.203(b). We affirm.

I.

Carl Shrader was employed by the Virginian Railroad in 1929 as a roundhouse laborer. In 1937 Shrader became an engine fireman, and in 1948 he became a locomotive engineer. With the exception of one year in which he worked as an assistant road foreman, Shrader retained his position as a locomotive engineer until he retired in 1975. The Virginian Railroad merged into N & W in 1959, which made N & W the responsible operator in this case.

From 1937 to 1975 Shrader, while working as an engine fireman and as a locomotive engineer, engaged in the transportation of coal by rail. Shrader worked on two types of runs: the Roanoke runs, which hauled processed coal to market, and coal mine runs, which are most of the runs at issue in this case and which served a number of mines and coal preparation facilities in the area. The ALJ found that Shrader spent, in aggregate, about eighteen years of his time making mine runs.

Shrader's mine runs began in Elmore, West Virginia. He left Elmore with empty railroad cars and dropped the empty cars at various mines and coal preparation facilities along the route from which he picked up cars loaded with coal. The loads mainly consisted of prepared coal, but Shrader also picked up raw coal, which accounted for about twenty percent of the coal he hauled. The raw coal was taken to preparation facilities at Affinity, Stokesbury, and Maben. Shrader testified that while on a mine run, he spent from two to six hours at the mines, where he was exposed to coal dust. The ALJ found the time he spent in and around mines and coal preparation facilities was significant.

The ALJ examined each of Shrader's activities, applied our decision in *Norfolk & W. Rwy. v. Roberson*, 918 F.2d 1144 (4th Cir. 1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2012, 114 L.Ed.2d 99 (1991), and found that Shrader was a miner as defined in the Black Lung Benefits Act and that the delivery of empty cars and the hauling of raw coal constituted coal mine employment. In determining the aggregate amount of time that Shrader spent on each of his activities, the ALJ found that Shrader spent nine years delivering empty cars to mines and preparation facilities and 1.8 years hauling raw coal. The ALJ therefore found that Shrader had 10.8 years of coal mine employment.

The ALJ reviewed Shrader's medical evidence and found the existence of pneumoconiosis from x-rays and a biopsy. The ALJ also found that Shrader was entitled to the presumption of 20 C.F.R. § 718.203(b) that his pneumoconiosis arose out of coal mine employment. The ALJ further found that no evidence had been presented to rebut the presumption that the pneumoconiosis arose out of coal mine employment. After examining several ventilatory and arterial blood gas studies and doctors' opinions, the ALJ found that Shrader had a compensable disability and that the disability was due to pneumoconiosis. The ALJ ordered N & W to pay Shrader benefits.

N & W appealed to the Benefits Review Board, arguing that the Black Lung Benefits Act does not apply to railroads. The Board rejected this argument in light of our decision in *Roberson*. The Board also affirmed the ALJ's application of *Roberson* and the finding that Shrader qualified as a miner under the Act. The Board further affirmed the ALJ's finding that Shrader had 10.8 years of qualifying coal mine employment. With respect to the contention by N & W that the ALJ had used a faulty method to find the amount of time that Shrader had performed qualifying activities, the Board found that the ALJ had acted within his discretion in finding that the testimony of Shrader and his coworkers established substantial evidence as to the length of his coal mine employment, see 33 U.S.C. § 921(b), and the Board noted that the ALJ "used a reasonable, carefully considered method of computation in fulfilling his duty to make a specific, complete finding on the length of claimant's coal mine employment." N & W raised several other objections, not pressed here, which the Board found to be without merit. The Board affirmed the ALJ in all respects.

Here, N & W argues that Shrader was not a miner within the meaning of the Act because the *Roberson* case was wrongly decided and that it does not apply to the facts in this case. N & W further argues that Shrader's work did not qualify as coal mine employment, that the method used to calculate the 10.8 years of employment was improper, and that the ALJ and the Board improperly relied on the presumption of 20 C.F.R. § 718.203(b) because Shrader did not have ten years of coal mine employment.

## II.

■ We must affirm the Board's statutory construction or application of the Act "if it is supported by a reasonable factual and legal basis." *Roberson*, 918 F.2d at 1147 (citing *Eplion v. Director, OWCP*, 794 F.2d 935, 936 (4th Cir.1986)). N & W argues that both the law on which the Board relied and the factual determinations of the ALJ, which the Board affirmed, were unreasonable.

■ N & W begins by urging us to overrule our decision in *Roberson* and to hold that the Act does not apply to railroads. Even if we were so inclined, which we are not, a panel of this court may not overrule another panel's decision. *Caldwell v. Ogden Sea Transp., Inc.*, 618 F.2d 1037, 1041 (4th Cir.1980); see also *United States Dep't of Health & Human Servs. v. FLRA*, 983 F.2d 578, 583 (4th Cir.1990) (Murnaghan, J., concurring and dissenting) (collecting cases).[1]

■ N & W next argues that the facts in this case are sufficiently distinguishable from *Roberson* to require a finding that Shrader was not a miner, and that the ALJ and the

---

**1.** We also do not address N & W's arguments about legislative intent. These arguments were raised in *Roberson,* and we see no need to address them again.

Board erred in not distinguishing *Roberson.* We disagree. The claimant in *Roberson* worked as a brakeman and conductor on designated N & W mine runs in which empty cars were delivered to mine sites and raw coal was loaded for hauling to a preparation facility. N & W makes much of the fact that the N & W runs in *Roberson* were dedicated runs between the mines and the preparation facilities, rather than involving other work, such as transportation of processed coal to distribution facilities, which does not qualify as coal mine employment. We do not find this distinction to be of any moment. Rather, we find that the decision by the Board to affirm the ALJ's finding that Shrader was a miner within the meaning of the Act has a reasonable basis in fact and law, and we affirm.[2]

 N & W next argues that Shrader's delivery of empty cars to coal preparation facilities should not be counted as coal mine employment.[3] The ALJ determined that "[t]he delivery of empty cars to preparation plants so that they could be loaded with processed coal was an integral part of the process of loading coal at the preparation plants, which, by definition, is part of coal preparation." The Board held that the ALJ "properly found all of the [delivery of cars] to be mining because the delivery of empties to be loaded with raw coal is integral to preparing coal, and the delivery of empties to be loaded with processed coal is integral to loading coal at preparation plants, which is also part of coal preparation." We are of opinion that the delivery of empty cars to a preparation facility is integral to the process of loading coal at the preparation facility and therefore is part of coal preparation. See 30 U.S.C. § 802(i) (including loading coal within the definition of preparation); *Roberson,* 918 F.2d at 1150 (noting that a railroad employee would not meet the function test *after* the coal is prepared and reloaded); *Mitchell v. Director, OWCP,* 855 F.2d 485, 490 (7th Cir.

1988) (stating that the rule is that "a coal mine transportation worker is involved in the extraction or preparation of coal if his work relates to the preparation of coal for delivery, rather than the delivery of the finished product to consumers in the stream of commerce").

 N & W's next argument is that because the ALJ improperly credited Shrader with time spent delivering empty cars to preparation plants, he improperly found that Shrader was entitled to the presumption of 20 C.F.R. § 718.203(b). Because, however, the ALJ correctly found that Shrader's work qualified as coal mine employment, he also correctly found that Shrader was entitled to the presumption. So that argument is without merit.

N & W's final argument, which is obliquely asserted in its brief, is that the method the ALJ used to calculate Shrader's period of coal mine employment, which necessarily relied on some approximation, was improper. We agree with the Board that the ALJ "used a reasonable, carefully considered method of computation in fulfilling his duty to make a specific, complete finding on the length of claimant's coal mine employment," and we affirm the Board's holding on this point.

### III.

The petition for review of N & W is accordingly denied, and the decision of the Board is

**AFFIRMED.**

---

**2.** N & W does not argue in its brief that the ALJ improperly applied the situs and function tests as described in *Roberson.* See *Roberson,* 918 F.2d at 1147. Such an argument would be futile, because our review of the decision of the Board and the decision of the ALJ, which the Board's order affirms, reveals that the test was properly

applied. Therefore, the Board had a reasonable basis in law for its decision.

**3.** N & W apparently does not argue that the delivery of cars to the mine sites did not constitute coal mine employment.