NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 6, 2021
Decided August 1, 2022

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2349

| | |
|---|---|
| SEIDU IDDRISSU and ROBIN SANDERS, *Plaintiffs-Appellants,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:19-CV-04391 |
| ALEJANDRO MAYORKAS, Secretary of U.S. Department of Homeland Security, *et al.,* *Defendants-Appellees.* | Charles R. Norgle, *Judge.* |

**O R D E R**

Seidu Iddrissu, a citizen of Ghana, is married to Robin Sanders, an American citizen. Sanders petitioned to have Iddrissu recognized as her immediate relative spouse, which would entitle him to lawful permanent residency in this nation. But the immigration authorities concluded that Sanders's petition must be denied because Iddrissu had previously sought to evade the immigration laws by entering into a fraudulent marriage. The couple challenged that determination in federal district court,

but the district court dismissed, ruling that under our precedents the couple had not stated even a plausible claim for relief. We agree and affirm.

I

Seidu Iddrissu is a citizen of Ghana who seeks permanent residency in the United States through his marriage to an American citizen. To that end, Iddrissu's American wife, Robin Sanders, filed an I-130 immediate relative visa petition on his behalf in late 2013. This petition, if granted, would cause Iddrissu to be recognized as one of Sanders's immediate family members, see 8 U.S.C. § 1154(b), entitling him to lawful permanent residency, see 8 U.S.C. § 1151(b)(2)(A)(i).

Three years later, United States Citizenship and Immigration Services (USCIS) issued a Notice of Intent to Deny Sanders's petition. The NOID indicated that Sanders's petition was to be denied by reason of the so-called marriage bar codified at 8 U.S.C. § 1154(c), which precludes lawful permanent residency for any non-citizen who has previously sought immediate relative status as the spouse of an American citizen "by reason of a marriage … [found] to have been entered into for the purpose of evading the immigration laws."

As it turns out, Iddrissu had previously been married to another American citizen, a woman named Shirlanda Sivels, from 2004 to 2013. Just as Sanders would later do, Sivels had filed an I-130 petition on Iddrissu's behalf following their 2004 marriage. But in 2006 Sivels withdrew that petition and, in doing so, apparently admitted that her marriage to Iddrissu had been a sham meant to evade the immigration laws. According to the NOID, Sivels admitted under oath that: (1) her marriage to Iddrissu was for the purpose of his staying in the United States permanently; (2) she had entered into it in exchange for financial support from Iddrissu; and (3) the two had never lived together. The NOID explained that these statements supported application of the marriage bar, but that the couple was entitled by the agency's regulations to rebut this information within 30 days.

In pursuit of that rebuttal opportunity, the couple requested a written copy of Sivels's admissions, which the NOID had merely summarized. But USCIS never provided that copy. So Sanders and Iddrissu instead challenged USCIS's marriage bar determination by submitting a notarized statement from Sivels, Iddrissu's ex-wife.

Sivels's notarized statement attested to the bona fide nature of her marriage to Iddrissu, stating that: (1) she and Iddrissu were married and lived together for six years; (2) the marriage was based on mutual love and affection; (3) they had established a life together; (4) Sivels and Iddrissu often argued over small things; (5) Sivels had accused Iddrissu of infidelity; and (6) they had both decided to end the relationship.

USCIS was unconvinced. In February 2017, it issued a written decision denying Sanders's I-130 petition under the marriage bar, concluding that Sivels's admissions of fraud constituted the substantial and probative evidence necessary to deem the marriage bar applicable. Although USCIS's decision acknowledged Sivels's notarized statement, it found that statement insufficient to rebut her earlier admissions. USCIS's decision also added a few more details about Sivels's admissions of fraud, including that they were made freely and voluntarily and that they were witnessed by two immigration officers and by her attorney.

Sanders sought review of USCIS's decision with the Board of Immigration Appeals, which dismissed, agreeing that Sanders's petition was precluded by the marriage bar. Like USCIS, the Board found that Sivels's statements attesting to the legitimacy of her marriage to Iddrissu failed to overcome her earlier statements to the contrary. It noted, too, that Sivels's submissions of a joint lease and joint bank account in support of her I-130 petition on Iddrissu's behalf did nothing to undercut her admissions of fraud. The Board's dismissal also offered further details on those admissions, including that Sivels had acknowledged meeting Iddrissu through a friend and described their marriage as "a favor for help."

From there, Sanders and Iddrissu filed a joint lawsuit challenging the denial of Sanders's petition in federal district court.[1] They faulted the agency in two respects. First, they contended that the agency's decision was so unreasoned as to be arbitrary and capricious under the Administrative Procedure Act. Second, they argued that the agency had committed reversible procedural error by failing to provide them with a copy of Sivels's earlier statements calling their marriage a sham.

---

[1] Iddrissu participates as a plaintiff in this lawsuit under 5 U.S.C. § 702, which authorizes any person "adversely affected … by agency action," to seek review of the agency's decision in federal court. For ease of reference, we at times refer to the couple solely by Iddrissu's name.

The agency responded by moving to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In response to the couple's argument that its decision was unreasoned, the agency insisted: (1) that its decision was adequately explained and supported by record evidence; and (2) that Sanders and Iddrissu merely sought reweighing of the evidence, which the district court lacked authority to do. As for the couple's procedural argument, the agency maintained that the NOID's summary of Sivels's statements had satisfied the relevant notice requirements.

The district court agreed. It concluded that the agency's decision was not arbitrary or capricious because it had been adequately supported by record evidence and was reasonably explained. It likewise concluded that our precedents rendered the agency's summary of Sivels's admissions adequate as a matter of law. Because these conclusions meant that Sanders and Iddrissu had failed to state a plausible claim for relief, the district court granted the motion to dismiss. The couple then timely appealed.

## II

Before us, Iddrissu presses the same two arguments raised in the district court: that the agency's decision was arbitrary and capricious in violation of the Administrative Procedure Act, and that the failure to provide a copy of Sivels's statements was reversible procedural error. We consider each argument in turn, assessing de novo whether the motion to dismiss was properly granted, *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019), because the couple failed to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation omitted).

## A

Iddrissu insists that the agency's decision fell short of the Administrative Procedure Act's requirements. We review agency determinations with great deference, see *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009), and we cannot substitute our judgment for that of the agency, see *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2571 (2019). But we remain authorized by the Administrative Procedure Act to set aside those decisions that are—among other things—arbitrary, capricious, or not supported by substantial evidence, see 5 U.S.C. § 706(2), meaning such evidence as "a reasonable mind would find adequate to support [the challenged] conclusion," *Ghaly v. INS*, 48 F.3d 1426, 1431 (7th Cir. 1995). The arbitrary and capricious standard requires an agency to do its homework; decisions that overlook relevant record evidence or lack a

satisfactory explanation don't pass muster. See *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Iddrissu thinks this is one such decision.

We think otherwise. Agencies must satisfactorily explain their decisions, but that requires only that "the agency's path may reasonably be discerned." *Id.* (citation omitted). USCIS (and the Board in dismissing) articulated exactly what evidence it thought justified applying the marriage bar: Sivels's admission, under oath, that her marriage to Iddrissu was a sham. The agency's path is crystal clear, not merely discernable.

Iddrissu insists that the agency gave short shrift to Sivels's notarized statement, overlooking any evidence that contradicted its initial view on the applicability of the marriage bar. He specifically faults USCIS for not discussing Sivels's statements in its written decision: her assertions that her marriage to Iddrissu was based on mutual love and affection, that they lived together, and that the relationship broke down under accusations of infidelity.

But USCIS had no duty to go line-by-line through Sivels's statement in issuing its decision. *Vergara-Molina v. INS*, 956 F.2d 682, 685 (7th Cir. 1992) (noting that an agency "need not … write an exegesis on every contention") (citation omitted). And the Board, in dismissing Sanders's petition for review, did in fact consider those specific assertions. It just found them unpersuasive and insufficient to rebut Sivels's earlier admission of fraud.

Iddrissu says this was just a conclusion, devoid of explanation. But what more could the Board have said? It had two contradictory statements from Sivels, and it was entitled to credit one over the other. See, e.g., *Fliger v. Nielsen*, 743 F. App'x 684, 688 (7th Cir. 2018) ("It was reasonable for the agency to discount [the prior spouse's] attempt to recant his sworn statement. Courts tend to be suspicious of attempts to retract sworn testimony after it produces some unfavorable result."). And the Board offered further explanation, observing that Sivels's notarized statement lacked any documentary support, weakening its evidentiary value. See 8 C.F.R. § 204.2(a)(1)(i)(B)(5) ("Affidavits should be supported, if possible, by one or more types of documentary evidence … ."). What's more, the Board noted (correctly) that Sivels's notarized statement did not directly rebut her earlier admissions, nor even discuss them. Cf. *Fliger*, 743 F. App'x at 689 (upholding application of marriage bar where petitioners provided evidence of an affectionate marriage but that evidence did not directly rebut

earlier admission that the marriage was entered into for immigration purposes). The Board considered all the evidence that it must and adequately explained its decision.

B

Iddrissu next contends that USCIS committed a reversible procedural error when it failed to provide him with a written copy of Sivels's initial statements. By its own regulations, USCIS needed to inform Iddrissu of any "derogatory" information unknown to him which underpinned the denial of the I-130 petition, and to provide him with an opportunity to rebut that information. 8 C.F.R. § 103.2(b)(16)(i). Iddrissu's view is that he was denied that opportunity by USCIS's refusal to provide a written copy of Sivels's statements.

But USCIS provided Iddrissu with all the information that he needed. It told him that Sivels had admitted to the prior fraudulent marriage. And it offered details, including Sivels's statements that: (1) she had met Iddrissu through a friend; (2) she had entered into the marriage in exchange for Iddrissu's promises of financial help with her children; (3) the couple had never lived together while married; and (4) Sivels had contacted Iddrissu only when needing help or a favor.

Iddrissu dislikes that he learned certain details regarding Sivels's statements—including that they were made in front of two immigration officers and her attorney—only upon the Board's dismissal of the petition for review. But all that the regulations require is the disclosure of *derogatory* information, and there's nothing inherently derogatory about a statement being made in front of government officials and an attorney. It was Sivels's allegations of fraud that were derogatory, not the circumstances under which they were made, and the NOID gave Iddrissu full notice of those. To be sure, details about Sivels's statements were provided only in summary form. But a summary provided Iddrissu all the opportunity he needed for rebuttal in this case. His attempted (albeit unsuccessful) rebuttal with the later notarized statement from Sivels shows as much. Beyond that, any qualms we might have about the proffered summary don't warrant reversal if harmless, see *Sahara Coal Co. v. Off. of Workers Comp. Programs, U.S. Dep't of Lab.*, 946 F.2d 554, 558 (7th Cir. 1991), and Iddrissu makes no meaningful argument that he would have been better able to rebut the agency's determination had he received written copies of Sivels's statements.

Because the agency adequately explained itself and gave Iddrissu the required opportunity to rebut its marriage bar determination, we AFFIRM the district court's dismissal for failure to state a claim.